**EOD**

07/27/2020

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **HOPE RENEE KEESE** | § | Case No. 18-40817 |
| xxx-xx-0192 | § | |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| THE BARBKNECHT FIRM, P.C. | § | |
| | § | |
| | § | |
| Plaintiff | § | |
| and Counter-Defendant | § | |
| | § | |
| v. | § | Adversary No. 18-4057 |
| | § | |
| HOPE RENEE KEESE | § | |
| | § | |
| Defendant | § | |
| and Counter-Plaintiff | § | |
| ------------------------------------------------- | § | |
| | § | |
| MARK A. WEISBART, Trustee of the | § | |
| Chapter 7 Bankruptcy Estate of | § | |
| Hope Renee Keese | § | |
| | § | |
| Plaintiff in Intervention | § | |
| | § | |
| v. | § | |
| | § | |
| THE BARBKNECHT FIRM, P.C. | § | |
| and HOPE RENEE KEESE | § | |
| | § | |
| Defendants in Intervention | § | |

## OMNIBUS MEMORANDUM OF DECISION REGARDING:
## (1) DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
### [*Regarding:  Count 10 - Objection to Discharge Under § 727(a)(2)(A)*] [dkt #57];

Case 18-04057   Doc 84   Filed 07/27/20   Entered 07/27/20 17:01:35   Desc Main
Document     Page 2 of 25

**(2)  DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
*[Regarding:  Count 8 - Dischargeability of Debt Under § 523(a)(2)(A)*
*and Count 9 - Dischargeability of Debt Under § 523(a)(4)]*[dkt #62]**; and**

**(3) PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
*[Regarding:  Count 2 - Liability for Breach of Contract*
*and Counterclaim of Defendant for Breach of Fiduciary Duty]* [dkt #61]**[1]**

On this date the Court considered the following Motions for Partial Summary

Judgment which have been filed in the above-referenced adversary proceeding:

(1)  Defendant's Motion for Partial Summary Judgment (the "*727 Motion*")
filed by the Debtor-Defendant, Hope R. Keese (the "Defendant" or
"Debtor") addressing Count 10 of the Plaintiff's Fourth Amended
Complaint,[2] which seeks to deny the Debtor a discharge under the
provisions of 11 U.S.C. § 727(a)(2)(A), to which a response in opposition
was filed by the Plaintiff, The Barbknecht Firm, P.C. (hereafter the
"*Plaintiff*" or the "*Firm*"), followed by the Defendant's reply;

(2)  Defendant's Supplemental Motion for Partial Summary Judgment (the
"*523 Motion*") addressing Counts 8 and 9 of the Plaintiff's Fourth
Amended Complaint, which respectively seek a determination of the
dischargeability of indebtedness as a debt procured by false representations,
false pretenses, or actual fraud under the provisions of 11 U.S.C. §
523(a)(2)(A) and as a debt for larceny under 11 U.S.C. § 523(a)(4) to which
a response in opposition was filed by the Plaintiff; and

(3) Plaintiff's Motion for (Partial) Summary Judgment (the "*Plaintiff's*

---

[1] This Memorandum of Decision is not designated for publication and shall not be considered as
precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case
or other evidentiary doctrines applicable to the specific parties in this proceeding.

[2]  The motions under consideration reference the Plaintiff's Third Amended Complaint.  Since
the filing of the motions, the Plaintiff was granted leave (in part) to file a Fourth Amended Complaint.
However, such an amended complaint added only a supplemental cause of action but did not change the
presentation of the causes of action addressed in the motions.

*Motion*") filed by the Plaintiff, The Barbknecht Firm, P.C., addressing Count 2 of the Plaintiff's Fourth Amended Complaint, which seeks to establish the liability of the Defendant under state law for breach of contract.  The Plaintiff's Motion also seeks relief in its capacity as a counter-defendant and seeks summary judgment on the counterclaim for breach of fiduciary duty filed by the Defendant [and Counter-Plaintiff], and as effectively mirrored in the Chapter 7 Trustee's Complaint in Intervention for the same relief on behalf of the Chapter 7 bankruptcy estate.  The Defendant filed a response in opposition to the motion to which the Trustee joined.  The Plaintiff thereafter filed a reply.

Upon due consideration of the pleadings, the proper summary judgment evidence submitted by the parties, and after a close examination of the relevant legal authorities, the Court concludes that genuine disputes regarding material facts exist which preclude either party from obtaining a judgment as a matter of law on the respective causes of action.  As set forth herein, the Court further elects to defer any determination regarding the Plaintiff's breach of contract claim until the time of trial.  However, the parties have collectively established a significant number of facts that are not genuinely in dispute and that will be considered as established in this adversary proceeding pursuant to Fed. R. Civ. P. 56(g).  This memorandum of decision disposes of all issues before the Court.[3]

---

[3] This Court has authority to enter a final judgment regarding all discharge and dischargeability issues presented in this adversary proceeding since those matters statutorily constitute a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(I), (J), and (O) and meet all constitutional standards for the proper exercise of full judicial power by this Court.  The Court is also authorized to enter a money judgment in the process of entering its discharge decisions. With regard to the Trustee's complaint in intervention or the Defendant's counterclaim based upon a pre-petition cause of action arising under state law, absent consent of the parties, this Court only possesses the power to submit proposed findings of fact and conclusions of law for review and consideration by an Article III district court as to that non-core claim, prior to the entry of a final order or judgment regarding such claim by the district court. However, the denial of the portion of the Plaintiff's motion for summary judgment pertaining to the non-core claim is permitted since it is an interlocutory ruling which establishes no more than that on the summary

## Factual and Procedural Background[4]

On February 10, 2016, the Defendant, Hope Renee Keese, hired the Plaintiff, The

Barbknecht Firm, P.C., to represent her in a divorce action involving child custody.  To

that end, the Defendant and the Plaintiff entered into an attorney-client relationship based

upon an agreement entitled "Agreement for Employment and Power of Attorney"[5] at

which time the Defendant paid a $3,000 retainer to the Plaintiff.  The initial employment

agreement provided for a two-week billing period and required the Defendant to pay that

bill within seven days of receipt.  Any payment failure would result in the invasion of the

retainer to cover those fees and the Defendant would be subsequently required to restore

the $3,000 retainer.  The divorce case was subsequently commenced in the 470th Judicial

District Court of Collin County, Texas, and styled *In the Matter of the Marriage of Hope

Renee Keese and Corey Michael Keese*, under case no. 470-50864-2016 (the "Divorce

Case").

The case quickly became more complicated than had been originally anticipated

---

judgment record there are fact issues which should be submitted to the trier of fact.  *Commerce Indus. Ins. Co. v. E.I. DuPont De Nemours & Co.* (*In re Malden Mills Indus., Inc.*), 277 B.R. 449, 455 (Bankr. D. Mass. 2002)(*citing Kutner Buick, Inc. v. Am. Motors Corp.*, 868 F.2d 614, 619 (3d Cir.1989)); *One-Eighty Invs., Ltd. v. First Int'l Bank* (*In re One-Eighty Invs., Ltd.*), 72 B.R. 35, 36-37 (N.D. Ill. 1987) [holding that district court need no make *de novo* review of bankruptcy court's denial of motion for summary judgment]; *Kaye v. Dupree* (*In re Avado Brands, Inc.*), 2006 WL 8436979, at *2 (N.D. Tex. July 3, 2006).

[4] The facts presented are those which stand uncontested between the parties and are presented only as a general factual background to the legal claims addressed by the respective motions.  This section is not intended to resolve any disputed or contested facts by and among the parties.

[5]  Plaintiff's Ex. A-1 [Plaintiff's Motion].

and a significant accrual of attorneys' fees began.  Because the Defendant made no

payments to the Plaintiff after tendering the initial retainer upon the inception of the

representation, the parties engaged in discussions regarding the growing fee problem and

the Plaintiff raised the specter of withdrawing from the representation for non-payment.

Those discussions resulted in the execution of a document which the Complaint

denominates as the Supplemental Fee Agreement (the "SFA") under which the Plaintiff

agreed to continue its role as the attorney of record for the Defendant in the divorce

action.[6]  The SFA essentially specified the means by which the growing sum of attorneys'

fees would ultimately be addressed.   Among the sources of payment identified in the

SFA was any interest which the Defendant subsequently obtained through the divorce

action in her soon-to-be ex-spouse's pension plan, which the Defendant agreed to

liquidate within five business days of receipt in order to pay any outstanding fees to the

Plaintiff.  The SFA further required the Defendant to pay to the Plaintiff any sales

proceeds which the Defendant might realize from the sale of her family's homestead

through the divorce action.  The specified sources did not preclude the Plaintiff's right to

explore unnamed sources.

Subsequent to the entry of the divorce decree, the Defendant and her spouse agreed

that she would relinquish her interest in the homestead in exchange for a greater share of

her husband's pension plan proceeds.  On August 29, 2017, the divorce court signed an

---

[6]  Plaintiff's Ex. A-2 [Plaintiff's Motion].

*Agreed Order Modifying Agreed Decree of Divorce*[7] which provided, *inter alia*, that the

Defendant would receive the sum of $182,094.00 from her ex-husband's pension plan at

the Ingersoll-Rand Company and the divorce court implemented that division by signing

on that same date a *First Amended Qualified Domestic Relations Order* (the "QDRO")

which generally delineated that the pension plan would establish a QDRO retirement

account in the Defendant's name in the designated amount of $182,094.00.[8]

Notwithstanding the terms of the Supplemental Fee Agreement, the Defendant never

tendered any of the proceeds from the QDRO retirement account to the Plaintiff.  On

February 5, 2018, the Defendant authorized a partial distribution from the QDRO

retirement account which, after federal tax withholdings of $47,058,83, resulted in her

receipt of net proceeds in the amount of $100,000.00.[9]  This $100,000.00 check was later

deposited by the Defendant into an IRA account managed by Fidelity Investments (the

"Fidelity IRA").[10]

     Having received no payment of any type from the Defendant, the Plaintiff initiated

litigation before the 296th Judicial District Court in and for Collin County, Texas for

---

[7]  Plaintiff's Ex. A-3 [Plaintiff's Motion].

[8]  Plaintiff's Ex. A-4 [Plaintiff's Motion].

[9]  Plaintiff's Ex. C-1 [Plaintiff's Motion].

[10]  Plaintiff's Ex. C-5 [Plaintiff's Motion].

recovery of the unpaid fees.[11]   Other creditors of the Defendant had also initiated state court litigation against her for unpaid accounts.   In light of these lawsuits, the Defendant filed a voluntary petition under Chapter 7 of the Bankruptcy Code in this Court on April 20, 2018.[12]

On June 3, 2018, the Plaintiff filed its original complaint against the Debtor-Defendant, seeking to deny the Defendant's Chapter 7 discharge pursuant to 11 U.S.C. § 727(a)(2)(A) based upon an alleged transfer of property by the Defendant with the intent to hinder, delay or defraud the Plaintiff as a creditor of the bankruptcy estate. Alternatively, the Plaintiff's complaint sought a determination of the dischargeability of its debt and claimed that any indebtedness established under its state law causes of action should be declared nondischargeable as a debt procured by fraud under 11 U.S.C. § 523(a)(2)(A) or a debt arising from larceny under 11 U.S.C. § 523(a)(4).   The original complaint was subsequently amended in response to the Defendant's motion to dismiss, after which the Court denied the Defendant's dismissal motion.   The Defendant subsequently filed an answer to the complaint.   After the completion of discovery, the parties have tendered the three previously-described motions for partial summary judgment for consideration.

---

[11]   Plaintiff's Ex. B-1 [Plaintiff's Motion].

[12]   *Voluntary Petition* filed by the Debtor-Defendant on April 20, 2018 [dkt #1] in case no. 18-40817, the Hon. Brenda T. Rhoades, presiding.

*Summary Judgment Standards and Process*

Each party brings their respective Motions for Partial Summary Judgment in this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056. That rule incorporates Federal Rule of Civil Procedure 56 which provides that summary judgment shall be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[13]

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion.[14] As a movant, a party asserting that a fact cannot be genuinely disputed must support that assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.[15]

The operation of the summary judgment standard depends upon which party will bear the burden of persuasion at trial. Thus, with reference to the portion of the Plaintiff's Motion that seeks summary judgment on its affirmative claim for relief under Count 10,

---

[13] FED. R. CIV. P. 56(a).

[14] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[15] FED. R. CIV. P. 56(c).

-8-

because the Plaintiff "bears the burden of persuasion at trial, it must also support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial."[16]  With reference to all aspects of the Defendant's two motions for partial summary judgment, as well as the portion of the Plaintiff's motion addressing its defense of the Debtor's counterclaim and the Trustee's complaint in intervention, the burden of persuasion at trial rests upon the non-moving party.  Under that scenario, "the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways.  First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim.  Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."[17]

If any of the motions are supported by a *prima facie* showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations or denials in its pleadings, but rather must demonstrate in specific responsive pleadings the existence of specific facts constituting a genuine issue of material fact for which a trial is necessary.[18]  "A fact is material only if its resolution

---

[16]  *Sell v. Universal Surveillance Sys., LLC*, 2017 WL 3712188, at *3 (W.D. Tex. July 6, 2017) (citing *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting)).

[17]  *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting);  *Fret v. Melton Truck Lines, Inc.*, 706 F. App'x. 824, 827 (5th Cir. 2017).

[18]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010).

would affect the outcome of the action. . . ."[19]  In so demonstrating, the non-movant must show more than a "mere disagreement" between the parties,[20] or that there is merely "some metaphysical doubt as to the material facts."[21]  Neither are unsubstantiated, conclusory assertions in the response sufficient to raise a genuine dispute of material fact.[22]  However, "[t]he issue of material fact which must be present in order to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."[23]

The record presented is reviewed in the light most favorable to the non-moving party.[24]  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"[25]  Further, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly

---

[19]  *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009); *accord Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

[20]  *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1413 (5th Cir. 1993).

[21]  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[22]  *McCarty v. Hillstone Rest. Group, Inc.*, 864 F.3d 354, 357 (5th Cir. 2017).

[23] *Anderson*, 477 U.S. at 248-49 (citing *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)).

[24] *Matsushita,* 475 U.S. at 587.

[25]  *Id.*

preclude the entry of summary judgment."[26]

*Plaintiff's Motion:  Breach of Contract Claim*

While presenting its plea for summary judgment on its state-law breach of contract

claim (Count 2), the Plaintiff elected to forego any summary judgment relief regarding

the determination of the various substantive bankruptcy grounds presented by the Plaintiff

for denial of the Defendant's discharge and/or the determination of nondischargeability of

a particular debt.  At least from the Plaintiff's perspective, those issues have been deferred

until trial[27] and it presents a bit of a conundrum for the Court.  Though the determination

of the dischargeability of a particular debt is clearly a core proceeding over which this

Court unequivocally has jurisdiction and the ability to exercise full judicial power, the

rendition of a money judgment for debt, when not linked contemporaneously with a

determination of dischargeability on that debt, is considerably more suspect.

The Fifth Circuit addressed these concerns in *Morrison v. Western Builders of*

*Amarillo, Inc.*[28]  In *Morrison*, the Circuit wrestled with the fundamental question of

"whether a bankruptcy court, *in addition to* declaring a debt nondischargeable, has

---

[26] *Anderson,* 477 U.S. at 248.

[27]  The Defendant, however, has brought her own motions for partial summary judgment:  the first addresses the Plaintiff's affirmative claim for relief under § 727(a)(2)(A); the second addresses the Plaintiff's affirmative claims for relief under § 523(a)(2)(A) and § 523(a)(4), which are addressed *infra.*

[28]  *Morrison v. Western Builders of Amarillo, Inc.* (*In re Morrison*), 555 F.3d 473 (5th Cir. 2009).

jurisdiction to liquidate the debt and enter a monetary judgment against the debtor."[29]

The Circuit noted that several of its sister circuit courts had answered in the affirmative,

principally upon the grounds of "tradition and pragmatism," though the Circuit anxiously

noted that "[t]heir reasoning, while pragmatic, stands in tension with the predominant

theory of bankruptcy court jurisdiction."[30]  While it eventually adopted the pragmatic

approach as logical and consistent with principles of judicial efficiency when

contemporaneous determinations are being conducted, the jurisdictional basis upon which

to determine an entitlement to a money judgment based on state law principles without a

contemporaneous determination of dischargeability is more perilous.  As the Circuit

noted,

> The bankruptcy court's "related-to" jurisdiction is not limitless.  Although
> determining that a debt is nondischargeable is plainly a "core" proceeding
> governed by a specific provision of the Bankruptcy Code, the rendition of a
> money judgment in favor of the creditor on that debt is not itself a core
> proceeding and, further, is not clearly related to the bankruptcy case or
> administration of the debtor's estate.  Indeed, that portion of the judgment
> has, in the usual case, no bearing on the bankruptcy case because it requires
> the debtor to pay a single debt outside of, apart from, and even after the
> completion of bankruptcy, and it frees the creditor thereafter from limiting
> its collection efforts to those afforded by the bankruptcy system.
> Commentators have noted the inconsistency inherent in a conclusion that
> rendering a money judgment for a debt found to be nondischargeable falls

---

[29]  *Id*. at 478 (emphasis added).

[30]  *Id*.

within the bankruptcy court's "related-to" jurisdiction.[31]

Despite some obvious discomfort, the Circuit finally concluded that

> [B]ecause the arguments of tradition and pragmatism make sense, and
> because no Fifth Circuit law holds to the contrary, we opt to follow the
> overwhelming authority and agree that the bankruptcy court had jurisdiction
> to enter judgment against Morrison for the debt owed to Western Builders
> *after* it found the debt nondischargeable.[32]

Thus, as directed by Circuit precedent, any jurisdiction that this Court possesses to

issue a money judgment for the benefit of the Plaintiff on its breach of contract claim

should be properly exercised only as a contemporaneous component of the determination

of the dischargeability issue.  Such a result is further necessitated by the threatened

imposition of substantial remedies sought in this litigation for the breaches of fiduciary

duty allegedly committed by the Plaintiff which could impact the enforcement of the

contract under the Count 2 claim.  Since, as set forth *infra,* the Court has further

concluded that the claims involving the alleged breaches of fiduciary duty by the Firm

involve genuine disputes of fact which necessitate a trial, the deferral in determining the

validity of the Count 2 claim is justified.[33]  Therefore, the Court exercises its discretion to

---

[31]  *Id.* at 479.

[32]  *Id.* at 479-80 (emphasis added).

[33]  *Firman v. Life Ins. Co. of N. America*, 684 F.3d 533, 538 (5th Cir. 2012) ["Even if the
standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes
that the better course would be to proceed to a full trial."] (citing *Anderson v. Liberty Lobby, Inc.*, 477
U.S. 242, 255 (1986)).

defer consideration of the breach of contract claim at the summary judgment stage and the

Plaintiff's Motion for Partial Summary Judgment on that particular claim is denied on that

basis.

*Defendant's 523 and 727 Motions;*
*Plaintiff's Motion:  re Counterclaim and Complaint in Intervention*

As evidenced by the final section of this Memorandum, there are a substantial

number of material facts, established either by stipulation or by the operation of Local

District Court Rule CV-56,[34] which are not actually in dispute in this case.  However, as

informed by a review of the applicable Texas jurisprudence, the existence of genuine and

significant factual disputes, together with certain unaddressed issues, precludes the

granting of a judgment as a matter of law for either movant.  In particular, the Plaintiff is

under a burden to establish that the Supplemental Fee Agreement is a contract

enforceable against the Defendant under the circumstances in which it was created and

the determination of that issue is a mixed question of law and fact which is reliant upon

facts which have yet to be established or are in genuine dispute.  The Defendant claims

that, as a matter of law, the SFA is "illegal, invalid and unenforceable."  That absolutist

position is not supported by Texas law.  However, the factual findings regarding the

creation and execution of the SFA will influence all of the parties' pending

discharge/dischargeability claims addressed by the motions.  It affects the Plaintiff's

claims of ownership or entitlement to another type of cognizable interest in the applicable

---

[34] *See infra* note 37.

portion of the QDRO retirement account.  It influences the outcome of the Plaintiff's

§ 727(a)(2)(A) claim as to whether the referenced pension plan property belonged to the

Debtor at the time of any transfer and, if so, whether the Debtor-Defendant's activities in

transferring portions of the designated retirement funds were performed with the requisite

intent.[35]  Additionally, without the establishment of the enforceability of the SFA, the

Plaintiff is precluded from establishing its § 523(a)(2)(A) claim for actual fraud based

upon alleged misrepresentations leading to that agreement.[36]  Further, the unestablished

facts germane to the enforceability of the SFA are critical to the viability of the Plaintiff's

larceny claim under § 523(a)(4) as the Plaintiff attempts to establish the scope of its

property rights in the pension plan proceeds as a prerequisite to demonstrating that the

Defendant engaged in an unlawful appropriation or deprivation of the Plaintiff's property

in a manner for which she could be convicted of theft under the Texas Penal Code.

Finally, the unresolved factual disputes and the omitted issues have a direct effect on the

viability of the alleged breaches of fiduciary duty under Texas law allegedly committed

by the Plaintiff as a result of the promulgation and execution of the SFA as alleged in the

---

[35]  To prevail on its claim under § 727(a)(2)(A), the Plaintiff is required, in this context, to demonstrate that there was:  (1) a transfer or removal of property;  (2) belonging to the debtor;  (3) within one year of the filing of the petition; and (4) performed with an intent to hinder, delay or defraud a creditor.  *See, e.g., Judgment Factors, LLC v. Packer ( In re Packer)*, 816 F.3d 87, 92–93 (5th Cir. 2016); *Pavy v. Chastant (In re Chastant)*, 873 F.2d 89, 90 (5th Cir. 1989).

[36]  *See* explanation provided in *Takuski v. Kurtz (In re Kurtz)*, 604 B.R. 549, 556–57 (Bankr. D. Neb. 2019) ["To establish the validity of the debt under § 523(a)(2)(A), the claimant must establish that the debtor is liable on an enforceable obligation under applicable law, nothing more nor less."]; *see also*, *Johnnie's Restaurant & Hotel Svc., Inc. v. Witmer* (*In re Witmer*), 541 B.R. 769, 774 (Bankr. M.D. Pa. 2015) ["Without an enforceable obligation, there can be no debt under § 523(a) which can be nondischargeable."]; *Thompson v. Roland (In re Roland)*, 294 B.R. 244, 249 (Bankr. S.D.N.Y. 2003) and cases cited therein.

-15-

Defendant's counterclaim and the Trustee's intervention complaint.  Thus, because the

parties' conduct in the creation of the Supplemental Fee Agreement stands as a lynchpin

with regard to the determination of the affirmative claims addressed by these three

motions, the existence of genuine factual disputes and other factual gaps preclude the

determination of those referenced claims on a summary basis.

*Issues Precluded from Relitigation*

For the foregoing reasons, to the extent that each party has requested the entry of

judgment in its favor as a matter of law on the designated counts, both of the Motions for

Partial Summary Judgment filed by the Debtor-Defendant and the portion of the Motion

for Partial Summary Judgment filed by the Plaintiff, addressing its defense against the

claim for breach of a fiduciary duty contained in the Defendant's counterclaim and the

Trustee's intervention complaint, must each be denied.  Nevertheless, as previously

stated, certain facts have been established.  The following facts are relevant to the issues

before the Court, have been established in this proceeding through stipulation or through

the auspices of Local District Court Rule CV-56,[37] and will not be re-litigated at the trial

---

[37] Local Rule of Bankruptcy Procedure 7056(d) specifically incorporates Local District Court
Rule CV-56. That rule, in relevant part, directs a movant to include a Statement of Undisputed Material
Facts and to support such a statement with "appropriate citations to proper summary judgment evidence."
It directs a respondent that any response "should be supported by appropriate citations to proper summary
judgment evidence."  With regard to the disposition of the motion, the rule states:

> (c) **Ruling**.  In resolving the motion for summary judgment, the court will assume that
> the facts as claimed and supported by admissible evidence by the moving party are
> admitted to exist without controversy, except to the extent that such facts are controverted
> in the response filed in opposition to the motion, as supported by proper summary
> judgment evidence.  The court will not scour the record in an attempt to unearth an
> undesignated genuine issue of material fact.

of this adversary proceeding:

1.     The Defendant, Hope Renee Keese, is an individual residing in Plano, Collin County, Texas.

2.     The Plaintiff is a law firm in Plano, Texas, through which Joseph Barbknecht ("Barbknecht") conducts his law practice.  Barbknecht is the owner and sole member of such law firm.

3.     In February 2016, the Defendant hired the Plaintiff to represent her in a divorce from her ex-husband, Corey Keese.

4.     On or about February 10, 2016, the Defendant and the Plaintiff executed an agreement entitled "*Agreement for Employment and Power of Attorney*" (the "Original Fee Agreement").[38]

5.     At that time, the Defendant paid the Plaintiff $3,000.00 as a retainer for the Plaintiff's legal services.

6.     The Original Fee Agreement provided, *inter alia*, that:

     (a)     attorney time would be billed at rates from $275 to $525 an hour;

     (b)     Attorney Barbknecht's rate for the matter was going to be $425 per hour;

     (c)     the $3,000 retainer would be placed in the Plaintiff's trust account and that if the Defendant failed to timely pay an invoice, then the Plaintiff would withdraw money from the retainer to be applied against the outstanding amount;

     (d)     in the event that the retainer was depleted, the Defendant would be required to restore the retainer to the $3,000 level; and

     (e)     the Defendant's failure to pay for services rendered would be grounds for the Plaintiff to terminate its representation of her and withdraw as her

---

Thus, any failure by a respondent to controvert the material facts set forth in any of the motions or to support such a challenge by references to proper summary judgment evidence, results in the facts as claimed and supported by admissible evidence by the movant "admitted to exist without controversy." E.D. TEX. LOCAL R. CV–56(c).

[38]  Plaintiff's Ex. A-1 [Plaintiff's Motion].

attorney.[39]

7.      When the Defendant signed the Fee Agreement she represented and communicated both verbally and in writing that she would pay the Plaintiff's fees.

8.      The divorce case was initiated in the 470th Judicial District Court of Collin County, Texas, styled *In the Matter of the Marriage of Hope Renee Keese and Corey Michael Keese*, Case No. 470-50864-2016 (the "Divorce Case").

9.      Soon after the Divorce Case was initiated, the Defendant defaulted on her payment obligations to the Plaintiff for accrued attorneys' fees.

10.     In response to the payment default, the Plaintiff intended to terminate its representation of the Defendant and withdraw as her attorney of record in the Divorce Case.

11.     On or about June 15, 2016, the Plaintiff sought assurances from the Defendant that she would pay its accruing fees and costs in light of the case growing in size and complexity.

12.     The Defendant wanted to retain the Plaintiff as her attorney in the Divorce Case.

13.     The Defendant invited the Plaintiff to rely on the money that she anticipated to receive from the sale of her house and the receipt of a portion of her ex-husband's pension plan as assurance for her ability to pay the Plaintiff's fees and costs.

14.     The Plaintiff had previously advised the Defendant that she would likely incur adverse tax consequences should she decide to liquidate any portion of the retirement funds that she might receive from her soon-to-be ex-spouse's pension plan in order to pay expenses.[40]

15.     The Plaintiff gave similar advice to the Defendant before she executed the Supplemental Fee Agreement.

16.     When the Defendant agreed to pay the Plaintiff's fees and expenses from the proceeds of her anticipated divorce settlement, such was the only source of funds that she had available to her to pay its fee.

---

[39] *Id*.

[40] Plaintiff's Ex. C-9 [Plaintiff's Motion].

17.     Indeed, the assets designated in the Supplemental Fee Agreement constituted the only source of funds that the Defendant had available to pay the approximate $9,500 that she owed the Plaintiff for accrued fees at the end of June 2016.

18.     Accordingly, on or about August 18, 2016, the Defendant and the Plaintiff entered into a supplemental fee agreement (the "Supplemental Fee Agreement"),[41] which acknowledges the Defendant's default under the Fee Agreement and provides the following:

> Hope Renee Keese desires that The Barbknecht Firm P.C. continue to represent her through the conclusion of the above-captioned matter. As consideration for doing so Hope Keese agrees that any monies coming to her from any source within this captioned case or from outside the case regardless of source will be first applied to the payment of fees, interest, expenses, and costs incurred by The Barbknecht Firm p.c. (sic) in consideration for The Barbknecht Firm P.C. continuing to represent Hope Keese.
>
> Ms. Keese will liquidate any interest she is awarded or becomes entitled to in Mr. Corey Keese's profit sharing pension plan within 5 business days for an award or settlement turning such funds legally over to her and shall pay any and all bills that such amount may cover with the Barbknecht Firm p.c. (sic).
>
> Ms. Keese will pay to The Barbknecht Firm p.c. (sic) first in time, the funds which she receives or is awarded from the sale of 1622 Geneieve Drive Wylie Tx. 75098 and or funds payable to her from Mr. Corey Keese toward satisfying attorney fees, interest, costs, and expenses in this matter and any other matter for which The Barbknecht Firm pc (sic) Is (sic) her counsel.[42]

19.     By signing the Supplemental Fee Agreement, the Defendant again represented and communicated her intention to pay the Plaintiff's fees.

---

[41]  Plaintiff's Ex. A-2 [Plaintiff's Motion].

[42]  *Id.* at 1.

20.     In mid-August 2017, the Defendant convinced the Plaintiff to allow the transfer of
        the pension plan award directly to her rather than having any portion paid directly
        to the Plaintiff for its fees or otherwise having the awarded funds paid jointly to
        both the Defendant and to the Plaintiff.

21.     On August 29, 2017, the presiding judge in the Divorce Case signed an *Agreed
        Order Modifying Agreed Decree of Divorce* (the "Modified Divorce Decree") that,
        among other things, awarded to the Defendant $182,094.00 as her portion of her
        ex-husband's retirement benefits in the retirement plan sponsored by his employer,
        Ingersoll-Rand Company.[43]

22.     The presiding judge also signed on August 29, 2017, a *First Amended Qualified
        Domestic Relations Order* ("QDRO") to facilitate the transfer of the designated
        Retirement Funds to the Defendant as a division of marital property in an attempt
        to maintain the status of such funds as a recognized, qualified tax-deferred
        retirement account under all applicable federal, state, and local tax and other
        laws.[44]

23.     In response to the entry of the QDRO, the Ingersoll-Rand Company Employee
        Savings Plan established and maintained a QDRO retirement account in the name
        of the Defendant in the principal amount of $182,094.00 through Fidelity
        Investments which was invested in a "default fund" entitled Vanguard Target
        Retirement 2045 Trust Plus.

24.     The $182,094.00 awarded to the Defendant in the form of a QDRO retirement
        account, representing her marital interests in her husband's retirement funds, was
        the only property that the Defendant received in the Modified Divorce Decree.

25.     Throughout the Divorce Case, the Plaintiff generated monthly invoices which
        itemized attorneys' fees and expenses incurred to date.[45]

---

[43]  Plaintiff's Ex. A-3 [Plaintiff's Motion].

[44]  Plaintiff's Ex. A-4 [Plaintiff's Motion].  "A QDRO is a limited exception to the pension plan
anti-alienation provision and allows courts to recognize a nonparticipant spouse's community property
interest in pension plans under specific circumstances." *Boggs v. Boggs*, 520 U.S. 833, 839 (1997).  "The
QDRO provisions protect those persons who, often as a result of divorce, might not receive the benefits
they otherwise would have had available during their retirement as a means of income." *Id*. at 854.

[45]  Plaintiff's Ex. C-4 [Plaintiff's Motion].

26.     The Defendant has admitted her receipt of these invoices as they were generated.

27.     Despite her receipt of those monthly invoices, the Defendant never instructed the Plaintiff to cease its activities or to limit the time that it spent on her case.

28.     As evidenced by the invoices, $94,723.57 had been incurred by September 19, 2017, only a few weeks after the entry of the Modified Divorce Decree.[46]

29.     A myriad of issues complicated the Divorce Case which increased the number of attorney services required to be rendered.  These issues included:

   (a)     the Defendant's sexual impropriety and her misrepresentations about that issue to her counsel, the Plaintiff;

   (b)     the Defendant's desire to achieve limited visitation and limited custody rights for her ex-husband;

   (c)     accusations of adultery by and against the Defendant and her ex-spouse;

   (d)     false allegations by the Defendant's ex-mother-in-law to the Defendant's employer.

30.     On or about November 7, 2017, the Plaintiff called to ask the Defendant what the status of the payment was and the Defendant told the Plaintiff that she had not yet received the divorce proceeds.

31.     On December 28, 2017, the Plaintiff forwarded to the Defendant a statement for its fees and expenses incurred to date, to which the Defendant responded that she did not have access to the money yet, but that she "most certainly will pay when it is available" to her.[47]

32.     On January 18, 2018, the Plaintiff confirmed with the payor of the pension plan proceeds that the funds had been made available to the Defendant for some time and that the Defendant's denials that she had received the funds were false.

---

[46]  Plaintiff's Ex. A-5 [Plaintiff's Motion] at 33.

[47]  Plaintiff's Ex. A-8 [Plaintiff's Motion].

33.     When confronted about the earlier transmittal of pension plan funds to her, the
        Defendant confirmed that she had received control of the retirement funds.

34.     Because of the size of the Plaintiff's fees, the Defendant sought a reduction of
        those fees and offered to pay a reduced amount, including payment offers
        submitted through Larry Levick, a bankruptcy attorney with whom she was
        consulting at the time due to her financial condition and the Plaintiff's demands.

35.     The Plaintiff did not accept the Defendant's settlement offers and would not reduce
        the amount of fees it was claiming from the Defendant (representing 59% of the
        amount she received in the Divorce Case even before the payment of income taxes
        for withdrawing retirement funds) and insisted upon being paid at least
        $104,000.00.

36.     The Plaintiff sent a series of demand letters to the Defendant claiming an
        ownership interest in the retirement funds and threatening, among other things,
        criminal prosecution of the Defendant if she failed to pay the Plaintiff's fees from
        the pension plan proceeds.[48]

37.     On February 5, 2018, the Ingersoll Rand Company Employee Savings Plan made a
        partial distribution from the Defendant's QDRO retirement account to the
        Defendant based upon the Defendant's instruction for a distribution that would
        provide a net payment of $100,000 to her.[49]

38.     The pension plan withheld the sum of $47,058.83 for taxes which was forwarded
        to the Internal Revenue Service.[50]

39.     The net sum of $100,000.00 was tendered to the Defendant by check.[51]

40.     The Defendant did not deposit the $100,000.00 check into her general bank
        account.

41.     Instead, on March 30, 2018, the Defendant deposited the $100,000.00 check to

---

[48]  Defendant's Ex. 3 [Defendant's 523 Motion].

[49]  Plaintiff's Ex. C-1 [Plaintiff's Motion].

[50]  *Id.*

[51]  *Id.*

-22-

fund a new individual retirement account with Fidelity Investments.[52]  Fidelity
Management Trust Co. is the Custodian of the Defendant's IRA account.

42.    The Defendant has maintained such IRA continuously since its creation on March
30, 2018, and has not withdrawn any funds from such IRA account.

43.    Other creditors began to take legal actions against the Defendant on various
financial obligations:

   (a)    On February 28, 2018, Discover Bank obtained a summary judgment
          against the Defendant for the judgment amount of $18,566.42;[53]

   (b)    On March 23, 2018, a default judgment against the Defendant was rendered
          in favor of Bank of America, N.A. in the amount of $13,495.37;[54] and

   (c)    On April 2, 2018, the Defendant was sued by Synchony Bank to recover the
          sum of $1,050.96.[55]

44.    On March 26, 2018, the Plaintiff initiated a state court lawsuit against the
Defendant to recover the unpaid attorneys' fees in an action filed before the 296th
Judicial District Court in and for Collin County, Texas.[56]

45.    In 2019, the Defendant received a refund based upon her 2018 federal income tax
return which included the pension fund distribution to the Defendant and the
substantial tax withholding amount arising from that transaction.

46.    The entirety of the 2018 tax refund was spent by the Defendant in 2019 on
personal expenses.

47.    On or about April 29, 2018, the Defendant filed a voluntary petition for

───────────────

   [52]  Plaintiff's Ex. C-5 [Plaintiff's Motion].

   [53]  Plaintiff's Ex. C-7 [Plaintiff's Motion].

   [54]  Plaintiff's Ex. C-6 [Plaintiff's Motion].

   [55]  Plaintiff's Ex. C-8 [Plaintiff's Motion].

   [56]  Plaintiff's Ex. B-1 [Plaintiff's Motion].

bankruptcy relief under Chapter 7 of the United States Bankruptcy Code.[57]

48.     In conjunction with her Voluntary Petition, the Debtor filed her Schedules and
        Statement of Financial Affairs in her Chapter 7 case.[58]

49.     The Plaintiff filed Proof of Claim #7-1 in the Defendant's bankruptcy case in the
        amount of $182,094.00 for representing the Defendant in her Divorce Case.[59]

50.     The amount claimed by the Plaintiff in its Proof of Claim is for the entire value of
        the QDRO retirement fund, which is the only property that the Defendant received
        in her Divorce Case.

## Conclusion

Based upon the Court's consideration of the pleadings, the summary judgment

evidence submitted therewith, the relevant legal authorities under both state and federal

law, and for the reasons set forth herein, the Court concludes that:  (1) the Defendant's

Motion for Partial Summary Judgment regarding § 727 issues filed by the Debtor-

Defendant, Hope R. Keese; (2) the Defendant's Second Motion for Partial Summary

Judgment regarding § 523 issues filed by the Debtor-Defendant, Hope R. Keese; and (3)

the Plaintiff's Motion for (Partial) Summary Judgment filed by the Plaintiff, The

Barbknecht Firm, P.C., are each hereby denied.  The Defendant failed to demonstrate an

entitlement to a judgment as a matter of law regarding the discharge issue presented under

---

[57] *See supra* note 12.

[58] *Schedules, Statement of Financial Affairs, and Other Required Statements* filed by the Debtor-
Defendant on April 20, 2018 [dkt #1] in case no. 18-40817.

[59] *Proof of Claim #7-1* filed by The Barbknecht Firm, P.C. on June 12, 2019 in case no. 18-
40817.

§ 727(a)(2)(A) or upon the dischargeability issues raised under § 523(a)(2)(A) and § 523(a)(4) in the Plaintiff's Fourth Amended Complaint.  The Plaintiff failed to demonstrate an entitlement to a judgment as a matter of law regarding the counterclaim for breach of fiduciary duty filed by the Defendant and duplicated in the Complaint in Intervention filed by Mark A. Weisbart, Chapter 7 Trustee.  Additionally, for the reasons set forth herein, the portion of the Plaintiff's Motion for Partial Summary Judgment pertaining to the Plaintiff's state law breach of contract claim is denied.  All such claims must be determined through a trial on the merits.  Summary judgment for each movant on the above-stated claims must therefore be denied.

Numerous material factual issues, however, have been established through the summary judgment evidence tendered to the Court.  Because the Court has not granted all of the relief sought by each of the three respective motions, it is appropriate to state those material facts that are not genuinely in dispute pursuant to Fed. R. Civ. P.  56(g) and such established facts as set forth in this memorandum shall not be re-litigated at the trial of this adversary proceeding.  Appropriate orders consistent with this opinion shall be entered.

Signed on 07/27/2020

THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE

-25-